**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **EDDIE CONLEY, #26689-509,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**R. PASS,**<br>**LEWIS,**<br>**MOULTEN,**<br>**RICHARDSON,**<br>**and JOHN DOE,**<br><br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No. 26-cv-00603-JPG** |

**MEMORANDUM & ORDER**

**GILBERT, District Judge:**

This matter is before the Court for review of the First Amended Complaint (Doc. 13) filed by Plaintiff Eddie Conley. Plaintiff is an inmate in custody of the Federal Bureau of Prisons (FBOP) and is currently confined at the Federal Correctional Institution located in Marion, Illinois (FCI-Marion). He brings this action pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), for alleged violations of his constitutional rights arising from the denial of medical care for an infection at USP-Marion. (Doc. 13). Plaintiff requests money damages and injunctive relief. *Id*.

The First Amended Complaint is subject to review under 28 U.S.C. § 1915A, which requires screening of prisoner complaints and dismissal of portions that are legally frivolous or malicious, fail to state a claim for relief, or request money damages from an immune defendant. 28 U.S.C. §§ 1915A(a)-(b). At this juncture, the factual allegations are liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

**First Amended Complaint**

Plaintiff makes the following allegations in the Amended Complaint (Doc. 13, pp. 6-12): Beginning in early 2026, several FCI-Marion inmates developed serious bacterial infections that caused swelling, skin discoloration, and oozing abscesses. *Id*. at 6. Plaintiff was housed next to an inmate who was hospitalized with the infection. Soon thereafter, on April 12, 2026, Plaintiff developed a fever and a large, painful lump on his left shoulder. The lump turned red, and the surrounding skin turned blue and purple. Pain and fever prevented him from sleeping.

At the time, Plaintiff was participating in FBOP's drug treatment program for opioid addiction, known as "medication assistance treatment" (MAT), and he required this treatment to avoid relapse and overdose after his release from custody. Medical staff administered it each day at noon in the medical building.

While at MAT on April 12, 2026, Plaintiff asked Nurse Moulten to look at the lump on his left shoulder. *Id*. at 7. He told Moulten and Gibbs that he was suffering from "excruciating pain" and fever that prevented him from sleeping. They said that it was "probably a pimple," and he should not worry about it. They did not examine his shoulder. Plaintiff's symptoms persisted into the night as the infection spread.

On April 13, 2026, Plaintiff returned to MAT and asked Nurse Moulten to examine his left shoulder again. He reported ongoing fever, pain, and sleeplessness. Nurse Moulten said the issue should be addressed at morning sick call, not MAT. Plaintiff insisted that his condition presented a medical emergency requiring immediate treatment. In response, Nurse Moulten said, "You can come to get you[r] dope (MAT), but not for sick call." *Id*. The nurse then made Plaintiff take "an out of ordinary piss test." *Id*. When Plaintiff again requested an examination, Nurse Moulten refused to look at his shoulder. *Id*. at 8.

On April 14, 2026, Plaintiff again asked Nurse Moulten to look at his shoulder. While asking, he removed his shirt and emphasized that the infection presented a medical emergency. Nurse Moulten looked at his shoulder and sent him to meet with P.A. Richardson. When meeting the physician's assistant, Plaintiff described his growing infection, oozing abscess, pain, fever, and sleeplessness. The physician's assistant took no steps to examine Plaintiff's left shoulder until Associate Nurse Martinez looked at it and insisted P.A. Richardson do so. Richardson took one look and admitted that the infection was serious. Plaintiff was given antibiotics and told to return for a shot, if the antibiotics did not work.

Plaintiff's symptoms persisted, so he went to Officer Fowler and requested emergency medical attention. He was sent back to the medical building for treatment around 9 p.m. Plaintiff removed his shirt to show Nurse Moulten the growing infection, blue blood, and oozing abscess. Nurse Moulten responded by ordering him to "cover your teddies, they . . . bigger than mine." *Id.* at 8-9. She sent him back to his unit without treatment or medication. *Id.* at 9. Plaintiff filed a Prison Rape Elimination Act (PREA) complaint against Nurse Moulten for making this comment.

On April 18, 2026, Plaintiff met with Nurse Hamilton in the medical building. She responded appropriately to his request for medical care by prescribing new antibiotics and recommending hospital treatment if they did not work. She also indicated that the medical staff would "operate more" on his left shoulder on Monday. *Id.*

On April 20, 2026, Health Care Administrator Lewis (HCA Lewis) called Plaintiff to the medical unit to check his wound. Plaintiff said that his shoulder presented a medical emergency. After examining him, P.A. Dillow agreed that he required treatment at a hospital. While he waited for transportation, Nurse Moulten stopped by and sarcastically asked Plaintiff with a smirk, "[A]re you going to sue me?" *Id.*

Plaintiff was taken into surgery as soon as he arrived at the hospital. *Id*. at 10. Dr. Ukl explained that he was infected with a flesh eating bacteria that could have been fatal. The doctor removed tissue from Plaintiff's shoulder while cleaning the wound, leaving a "permanent gap" in his left shoulder flesh. *Id*. Dr. Ukl dressed the wound and provided Lt. Brooks with orders to replace the dressing four times per day at FCI-Marion. Lt. Brooks shared these orders with the prison's medical staff the same day. Even so, FCI-Marion's medical staff changed Plaintiff's dressing only once daily. The seeping wound took additional time to heal. Plaintiff still suffers from burning sensations and pain in his left shoulder.

When Plaintiff initiated the grievance process, he was interviewed by SIS in June 2026. However, he never received a written report. Then, Moulten, Pass, Lewis, and Richardson retaliated against him for complaining by denying him all further medical treatment at the prison. Lewis also removed him from the MAT program based on a false accusation that he diverted his medication, and Plaintiff seeks reinstatement of his medication assistance treatment. *Id*.

## Preliminary Dismissals

Plaintiff identifies John Doe as a defendant in the Complaint and sets forth no allegations against this individual. When a plaintiff fails to include the name of a defendant in his statement of claim or set forth any allegations against him, the defendant cannot be said to have notice of which claims, if any, are directed against the party. FED. R. CIV. P. 8(a)(2). Accordingly, John Doe will be dismissed from this action without prejudice.

Plaintiff mentions the following other individuals in the statement of his claim but does not identify them as defendants: Gibbs, Officer Fowler, Lt. Brooks, Associate Nurse Martinez, Nurse Hamilton, P.A. Dillow, Dr. Ukl, and FCI-Marion's medical staff. The Court will not treat these, or any other, nonparties as defendants, and all claims against them are considered dismissed

without prejudice. *See* FED. R. CIV. P. 10(a) (title of complaint "must name all the parties").

## Discussion

Based on the allegations, the Court finds it convenient to designate the following counts in the *pro se* First Amended Complaint:

**Count 1:** Eighth Amendment claim against Defendants for denying Plaintiff adequate medical care for an infection in his left shoulder beginning April 12, 2026.

**Count 2:** Eighth Amendment medical deliberate indifference claim against Defendant Lewis for removing Plaintiff from the MAT program in 2026.

**Count 3:** First Amendment retaliation claim against Defendants Pass, Lewis, Moulten, and Richardson for denying Plaintiff medical and drug treatment after he filed grievances to complain about the denial of medical care for his infection in April 2026.

**Count 4:** PREA claim against Defendant Moulten for commenting on the size of Plaintiff's chest during an examination in April 2026.

Any claim that is mentioned in the First Amended Complaint but not addressed herein is considered dismissed without prejudice as inadequately pled under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

### Counts 1, 2, and 3

Plaintiff brings his first three claims pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), which provides an implied damages remedy for a limited set of constitutional deprivations caused by persons acting under color of federal authority. *Id*. To date, the United States Supreme Court has recognized this implied damages remedy against federal officials in three instances: (1) a Fourth Amendment claim involving an unlawful search and seizure in *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971); (2) a Fifth Amendment sex discrimination claim in *Davis v. Passman*, 442 U.S. 228 (1979); and (3) an Eighth Amendment medical deliberate

indifference claim in *Carlson v. Green*, 446 U.S. 14 (1980). *See Ziglar v. Abbasi*, 137 U.S. 1843, 1859-60 (2017). The Supreme Court has also instructed federal courts to refrain from expanding this remedy into contexts not previously recognized by the Supreme Court, unless certain "special factors" counsel otherwise. *Id.* at 1859-60. More recently, the Court has made clear that all further expansion of the *Bivens* remedy is a strongly disfavored judicial activity. *See Egbert v. Boule*, 596 U.S. 482 (2022).

Counts 1 and 2 arise under the Eighth Amendment and present virtually the same context as *Carlson*, so the Court will consider whether the allegations articulate a claim against any defendants. The Eighth Amendment prohibits cruel and unusual punishment of convicted persons. U.S. CONST. amend VIII. It is well settled that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). To articulate a claim in this context, a plaintiff must first show a "sufficiently serious" medical need. *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). "An objectively serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) (quoting *Zentmyer v. Kendall Cnty., Ill.,* 220 F.3d 805, 810 (7th Cir. 2000)) (internal citation omitted). Plaintiff must next show that each defendant responded to his medical need with deliberate indifference, which occurs when a defendant knew of and disregarded "an excessive risk to inmate health or safety." *Gutierrez*, 111 F.3d at 1369. Plaintiff must separately establish each defendant's personal involvement and culpable state of mind in inflicting harm against the prisoner. *McCree v. Sherrod*, 408 Fed. Appx. 990 (7th Cir. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009)).

In Count 1, Plaintiff describes an objectively serious infection in his left shoulder that necessitated emergency surgery. Nurse Moulten's refusal to examine, treat him, or send him out for treatment supports a claim of deliberate indifference against this defendant. Count 1 survives screening against Nurse Moulten.

However, this claim shall be dismissed against Defendants Richardson, Lewis, and Pass because Plaintiff has failed to allege any deliberate indifference by them. During a single encounter with Plaintiff, P.A. Richardson prescribed antibiotics and recommended a shot if the antibiotics did not work. Plaintiff did not return for the shot. During a separate encounter with Plaintiff on April 20, 2026, HCA Lewis checked Plaintiff's wound and sent him to the hospital for emergency medical care without delay. Pass is not named in connection with this claim at all, so the plaintiff has not established his or her personal involvement in a denial of medical care. Count 1 shall be dismissed without prejudice against Richardson, Lewis, and Pass.

In Count 2, Plaintiff does not describe an objectively serious medical need or Lewis's deliberate indifference to it. Plaintiff mentions his opioid addiction, treatment with MAT, and termination from the MAT program. However, the First Amended Complaint is silent about any diagnosis with opioid addiction, the date of diagnosis, treatment prescribed for it, whether the MAT program served as this treatment, whether his termination from MAT was sudden, and whether he suffered any harm as a result. The allegations offered in support of this claim suggest a possible, not plausible, claim for medical deliberate indifference against Lewis. As such, Count 2 shall be dismissed without prejudice for failure to state a claim against Lewis and all other defendants.

Finally, Count 3 arises under the First Amendment and is subject to dismissal at screening. The retaliation claim arises in a different context than the claims at issue in *Bivens*, *Davis*, and

*Carlson*. This claim is unlike the Fourth Amendment excessive force claim in *Bivens*, Fifth Amendment sex discrimination claim in *Davis*, and Eighth Amendment medical deliberate indifference claim in *Carlson*. Plaintiff also had access to an alternative remedy for addressing the claim using the FBOP's Administrative Remedies form to grieve the issue. The existence of this remedial process, alone, counsels against expansion of the *Bivens* remedy to include the retaliation claim. Moreover, the Supreme Court settled the question of whether such claims should proceed against individual federal agents in *Egbert* and held that *Bivens* does not create a cause of action for First Amendment retaliation claims. *Egbert*, 596 U.S. at 498. Accordingly, Count 3 shall be dismissed with prejudice for failure to state a claim against the defendants.

**Count 4**

Courts that have considered the issue agree that the Prison Rape Elimination Act does not support a private cause of action. *See Truly v. Moore*, No. 16-cv-00783-NJR, 2017 WL 661507 (S.D. Ill. 2017) (citing *Ross v. Garrett*, No. 15-cv-00309-SMY-SCW, Doc. 76) (collecting cases and dismissing PREA claim brought under circumstances similar to those described here). Plaintiff's PREA claim will be dismissed with prejudice.

**Disposition**

**IT IS ORDERED** that the First Amended Complaint (Doc. 13) survives screening under 28 U.S.C. § 1915A, and **COUNT 1** will proceed against Defendant **MOULTEN**, in an individual capacity only. However, **COUNT 2** is **DISMISSED** without prejudice, and **COUNTS 3** and **4** are **DISMISSED with prejudice** for failure to state a claim. Defendants **PASS, RICHARDSON, LEWIS,** and **JOHN DOE** are also **DISMISSED** without prejudice because the First Amended Complaint states no claim for relief against them.

Further, the Clerk of Court is **DIRECTED** to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on Defendant **MOULTEN**; the Clerk shall issue the

completed summons. The United States Marshal **SHALL** serve Defendant **MOULTEN** pursuant to Rule 4(e) of the Federal Rules of Civil Procedure. Rule 4(e) provides, "an individual – other than a minor, an incompetent person, or a person whose waiver has been filed – may be served in a judicial district of the United States by: (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the following: (A) delivering a copy of the summons and of the First Amended Complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or law to receive service of process." All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service.

It is **FURTHER ORDERED** that Plaintiff shall serve upon Defendant, or if an appearance has been entered by counsel, upon that attorney, a copy of every pleading or other document submitted for consideration by this Court. Plaintiff shall include with the original paper to be filed a certificate stating the date that a true and correct copy of the document was mailed to defendant or counsel. Any paper received by a district judge or a magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the First Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Local Rule 8.2, Defendant should only respond to the issues stated in this Merits Review Order.**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, even though his

application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**The Clerk of Court is DIRECTED to ENTER the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act and TERMINATE Defendants PASS, RICHARDSON, LEWIS, and JOHN DOE as parties to this action in CM/ECF.**

**IT IS SO ORDERED.**

**DATED: 11/5/2026**

**J. PHIL GILBERT**
**United States District Judge**

**Notice**

The Court will take the necessary steps to notify the appropriate defendant of your lawsuit and serve them with a copy of your First Amended Complaint. After service has been achieved, the defendant will enter their appearance and file an Answer to your First Amended Complaint. It will likely take at least 60 days from the date of this Order to receive the defendant's Answer, but it is entirely possible that it will take 90 days or more. When the defendant has answered, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendant before filing any motions to give the defendant notice and an opportunity to respond to those motions. Motions filed before defendant's counsel has filed an appearance will generally be denied as premature. The plaintiff need not submit any evidence to the court at this time, unless otherwise directed by the Court.